**William I. KOCH, et al., Plaintiffs,**

v.

**KOCH INDUSTRIES, INC., et al., Defendants.**

**No. 85–1636–SAC.**

United States District Court, D. Kansas.

April 3, 1998.

Clifford L. Malone, Adams, Jones, Robinson & Malone, Wichita, KS, Thomas E. Wright, Wright, Henson, Somers, Sebelius, Clark & Baker, L.L.P., Topeka, KS, Harry L. Najim, Najim Law Offices, Wichita, KS, John T Hickey, Jr., Alex Dimitrief, Kirkland & Ellis, Chicago, IL, Joseph F. Ryan, Lyne, Woodworth & Evarts, Boston, MA, Abraham D. Sofaer, John M. Townsend, Norman C. Kleinberg, Michael E. Salzman, Hughes, Hubbard & Reed, Washington, DC, Jerome G. Shapiro, Robert J. Sisk, Steven A. Hammond, Nicolas Swerdloff, Hughes, Hubbard & Reed, New York City, Fred H. Bartlit, Jr., Bartlit, Beck, Herman, Palenchar & Scott, Chicago, IL, Donald E. Scott, Ellen A. Cirangle, Bartlit, Beck, Herman, Palenchar & Scott, Denver, CO, for William I. Koch, Oxbow Energy, Inc., Springfield Creek Art Foundation, Inc., Northern Trust Co.

Clifford L. Malone, Adams, Jones, Robinson & Malone, Wichita, KS, Harry L. Najim, Najim Law Offices, Wichita, KS, Gregory S.C. Huffman, Frank L. Hill, L. James Berglund, II, Thompson & Knoght, Dallas, TX, for L.B. Simmons Energy Inc., Gay A. Roane, Ann Alspaugh, Marjorie Simmons Gray, Marjorie L. Simmons, Paul Anthony Andres Cox, Holly A. Andres Cox Farabee.

Clifford L. Malone, Adams, Jones, Robinson & Malone, Wichita, KS, Harry L. Najim, Najim Law Offices, Wichita, KS, Russell E. Brooks, Milbank, Tweed, Hadley & McCloy, New York City, for United States Trust Co. of New York, Frederick R. Koch.

Stephen M. Joseph, Redmond & Nazar, L.L.P., Wichita, KS, Michael Paul Kirschner, Lee & Kirschner, P.L.L.C., Oklahoma, City, OK, for Louis Howard Andres Cox, Nationsbank N.A.

James M. Armstrong, Robert L. Howard, Timothy B. Mustaine, Foulston & Siefkin L.L.P., Wichita, KS, Donald L. Cordes, Wichita, KS, for Koch Industries, Inc., Charles G. Koch.

James M. Armstrong, Robert L. Howard, Timothy B. Mustaine, Foulston & Siefkin L.L.P., Wichita, KS, for Sterling V. Varner, David H. Koch, Donald L. Cordes, Thomas M. Carey.

Michael W. Merriam, Gehrt & Roberts, Chartered, for Kansas Press Association, Kansas Association of Broadcasters, Wichita Eagle–Beacon, Topeka Capital–Journal, WIBW–TV, Kansas City Star Company, Wichita Business Journal, Harris Enterprises, Inc., Koch Crime Comm.

## MEMORANDUM AND ORDER

CROW, Senior District Judge.

The case comes before the court on the plaintiffs' motion for reconsideration and modification of the court's rulings in limine on (1) post–1985 lawsuits and (2) consultations with health professionals and for clarification of certain aspects of those rulings. (Dk.743). The defendants have filed their response opposing the motion to reconsider. (Dk.753). The court conducted a hearing on April 2, 1998, at 3:00 p.m. at which counsel for the plaintiff William Koch, William Koch, and counsel for the defendants attended in person and argued their positions. Counsel for the other plaintiffs appeared by telephone.

### STANDARDS GOVERNING MOTION TO RECONSIDER

As the rules of this court provide, "[a] motion to reconsider shall be based on (1) an

intervening changed in controlling law, (2) availability of new evidence, or (3) the need to correct clear error or prevent manifest injustice." D.Kan. Rule 7.3. The application of this rule obviously is subject to other orders of the court and to other standards that govern such rulings.

In its order deciding the in limine motions (Dk.719, pp. 3–4), the court indicated that its denial of a motion was subject to reconsideration at trial. This use of the contemporaneous objection rule gives the trial judge the "opportunity to 'reconsider his in limine ruling with the benefit of having been witness to the unfolding events at trial.'" *Marceaux v. Conoco, Inc.*, 124 F.3d 730, 734 (5th Cir.1997) (quoting *United States v. Graves*, 5 F.3d 1546, 1552 (5th Cir.1993)). In fact, the court may even have "a duty to reconsider" when evidence at trial amounts to "positive proof that its prior ruling was erroneous." *Guillory v. Domtar Industries Inc.*, 95 F.3d 1320, 1332 (5th Cir.1996).

■ Because the plaintiffs have filed their motion before trial, the court believes the general standards governing motions to reconsider apply now. *See, e.g., Burger v. Mays*, 176 F.R.D. 153, 155 (E.D.Pa.1997). A court's rulings "are not intended as first drafts, subject to revision and reconsideration at a litigant's pleasure." *Quaker Alloy Casting v. Gulfco Industries, Inc.*, 123 F.R.D. 282, 288 (N.D.Ill.1988). A motion to reconsider is appropriate if the court has obviously misapprehended a party's position, the facts, or applicable law, or if the party produces new evidence that could not have been obtained through the exercise of due diligence. *Comeau v. Rupp*, 810 F.Supp. 1172, 1175 (D.Kan.1992); *see Refrigeration Sales Co. Inc. v. Mitchell–Jackson, Inc.*, 605 F.Supp. 6, 7 (N.D.Ill.1983), *aff'd*, 770 F.2d 98 (7th Cir.1985). A motion to reconsider is not appropriate if the movant only wants the court to revisit issues already addressed or to hear new arguments or supporting facts that could have been presented originally. *Comeau v. Rupp*, 810 F.Supp. at 1175.

## PRIOR IN LIMINE ORDER

The court on March 20, 1998, filed its rulings on the in limine motions that were pending. On the plaintiffs' motion to "prohibit any references at trial and exclude any evidence offered by defendants concerning other lawsuits involving the plaintiffs that were initiated after June 7, 1985," (Dk.663, p. 1), the court denied the motion as to seven of the fifteen named lawsuits and denied the plaintiffs' request to exclude evidence suggesting that William Koch is engaged in an "ongoing vendetta" against his brothers, Charles and David Koch. (Dk.719, pp. 56–57). Based on what the defendants had filed and on its own experience from handling this case, for over a decade, the court observed that "William Koch's animosity for Charles and David, the intensity of those feelings, and the actions that reveal those feelings are central to the defendants' case *in several regards*." (Dk.719, p. 13) (italics added).

On the plaintiffs' motion to exclude evidence of medical consultations for psychological or psychiatric purposes, (Dk.664, p. 2), the court ruled that the evidence has probative value, that the balancing of Rule 403 concerns could not be completed without hearing the specific evidence, that the evidence would not be excluded at this time because of its assumed sensitive nature, and that the plaintiffs had not carried their burden in proving this motion. (Dk.719, p. 17).

## POST–1985 LAWSUITS

### Argument

The plaintiffs contend that the court in its ruling gave the issue of family relationships more significance than ever before argued by the parties and apparently elevated its status beyond the need to balance competing Rule 403 concerns. The plaintiffs deny the importance of this issue asserting its absence from the pleadings and the pretrial order. The plaintiffs describe the defendants' prior use of this issue as a "peripheral matter" argued in passing in the preface and conclusion of their briefs. The plaintiffs argue unfairness in that this issue was not the subject of discovery, was never disclosed to be a matter of central importance, and was outside the 1981–1985 discovery time period imposed against the plaintiffs. In their brief, the plaintiffs maintain the emotionally-charged evidence connected with this issue is inflammatory, prejudicial, and cumulative of other admissible evidence on bias. The plaintiffs

repeatedly mention the perceived unfair prejudice from the evidence that William and Frederick Koch named their mother as a defendant in a lawsuit against their brothers.

### Ruling

■ As with almost every evidentiary dispute involving Rules 401 through 403, one side promotes the evidence as particularly relevant and critical to its case, while the other side disparages the evidence as peripherally relevant and prejudicial. This is why most courts, facing this situation, will wait to see how the evidence and events unfold at trial before ·ruling on admissibility. This is what the court has done here, and the points reiterated by the plaintiffs do not persuade the court to do otherwise.

The court will address briefly those arguments that the plaintiffs have said are the "heart of their position." The court has neither the time nor the inclination to pore over the prior pleadings [1] and extract all references to family relations. Nor should there be a need for the court to quote from its prior discovery orders any observations about the parties' apparent motives. A plain reading of those matters along with a detailed review of this case's procedural history would leave most with the impression that the litigation is occurring in the shadows of issues that are much larger and more personal for the parties. The plaintiffs have no real basis for alleging surprise over the defendants' desire to present relevant evidence on this issue and to argue its importance to the claims and defenses in this case.

The plaintiffs' arguments for a level playing field are misdirected. The court's prior rulings on the scope of the pretrial order focused not on whether the plaintiffs mentioned certain evidence there but on whether the plaintiffs had actually alleged certain claims of fraud and elements of damages. Other than a listing of the witness and exhibit, the ·pretrial order does not require the parties to give detailed accounts of all evidence to be used in proving or refuting the claims, damages and defenses in the case. For that matter, the issue of witness credibility exists in every trial, and the admissibility of evidence on that issue does not depend on the parties having mentioned it in the pretrial order. As for the time parameters set in the magistrate judge's discovery orders,[2] the plaintiffs have not demonstrated any prejudice or unfairness on this issue as a result of that discovery limitation.

1. The court will provide one example. In their motion for summary judgment, the defendants expressly mentioned this issue as part of their position in this litigation:

   Defendants' position in this litigation is that the *Blakesley* [v. *Johnson*, 227 Kan. 495, 608 P.2d 908 (1980)] fiduciary duties did not exist, or were severely attenuated, because of the complete absence of trust and confidence between plaintiffs and defendants, as reflected, for example, in the fact that the stock sale at issue was made to settle a lawsuit that itself reflected a bitter contest for corporate control and considerable personal enmity. For purposes of this summary judgment *only*, however, defendants do not argue that the *Blakesley* is inapplicable.

   (Dk. 581, p. 17 n. 3) (bolding added). The court referred to this position in its summary judgment order. *Koch v. Koch Industries, Inc.*, 969 F.Supp. 1460, 1491 n. 11 (D.Kan.1997).

2. Until the parties demonstrate otherwise, the court stands by its statement at the hearing that it is unaware of any order where it has been directly asked to review and did review the 1981—1985 time parameters imposed by the magistrate judge for discovery of certain financial and business records of KII. The plaintiffs' counsel at the hearing offered that the district court did review those time parameters in its order filed October 24, 1991. The court's order filed that date (Dk. 386, 1991 WL 241814) addresses no arguments specifically challenging the propriety of those time parameters. The magistrate judge appears to have first adopted this time-period restriction in his order filed January 6, 1990, (Dk.241), concerning discovery from the banks lending KII the money needed to buyout the plaintiffs. In relevant part, the magistrate judge noted:

   Allowing the plaintiffs to reach back to January of 1981 allows an adequate period of time, *prior to the June, 1983 Agreement,* (and prior to the first action filing date in October 1982) to determine the full extent of the transactions between Koch and the·lending banks to accomplish the stock buyout. This time extends further back in time than the previous discovery period of January, 1983, requested ·by plaintiffs, and it appears more than adequate to allow plaintiffs to discover all documents and records pertaining to any discrepancy in values reflected by the financial statements and documents, on the one hand, and the values relied on in connection with the stock purchase agreement, on the other.

   Similarly, a cut off date of December 31, 1985 appears more than reasonable.... If what is discovered pertaining to the period

The plaintiffs are mistaken if they believe the court has not balanced the competing Rule 403 concerns in ruling on their motion or if they believe the court will not balance those concerns at trial before admitting any evidence to which a Rule 403 objection is made. The court's order indicates it considered the prejudice if the evidence were "used to paint William Koch as a 'litigious character' who files lawsuits devoid of merit." The court observed that a limiting instruction may be effective in curing or, at least, minimizing the plaintiffs' concerns over prejudice. The court's concerns over prejudice and delay were also addressed in its footnote suggesting that the parties can introduce this evidence for its limited purpose without having it explode into mini-trials of the other lawsuits.

The plaintiffs draw the court's attention in particular to the lawsuit naming their mother as a defendant. "A majority of potential jurors in Kansas no doubt believe that it is never appropriate to sue one's own mother, and will harbor deep mistrust for anyone who would do that." (Dk.743, p. 6). The potential jurors' responses to the question, "Do you believe it is ever appropriate to sue a family member?," asked in the questionnaire suggest the plaintiffs may be overstating the prejudice. "Evidence is not unfairly prejudicial simply because it is damaging to an opponent's case. Rather, the evidence must have 'an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one.'" *United States v. Martinez*, 938 F.2d 1078, 1082 (10th Cir.1991) (quoting Fed.R.Evid. 403 advisory committee's note) (internal citations omitted). The court is confident that the plaintiffs' able counsel will be able to address and minimize whatever potential for unfair prejudice may exist in the jury pool over this evidence and to alert the court's attention when they believe this evidence is being used unfairly at trial.

Finally, the court would like to clarify its in limine order on this subject and elaborate on what is said at footnote one. The court does not consider its comments in footnote one to create any exception to its other ruling "that parties and counsel are precluded from presenting evidence or referring to the comments, findings, or rulings made by this court or any other court concerning the plaintiffs, the defendants or any of the claims in this case or any prior or pending litigation involving these parties." (Dk.719, pp. 57–58). Footnote one was simply the court's expressed "hope" that it would not be forced to modify this ruling because a side opened the door for a presentation of evidence from those cases or for a discussion of the court's rulings, findings or comments in those cases. The court believes that its rulings on the motions in limine are not inconsistent, that both sides can fairly abide by both rulings, and that any need to modify the order is really a matter of what unfolds at trial.

The court offers the following directions on what it expects from both sides and what the parties can expect from the court with respect to the handling of this evidence. The court desires as much as the parties to keep the jury from being confused or distracted by

---

from January 1, 1981 to December 31, 1985, indicates the period should be enlarged, the court has the power and discretion to do so. Likewise, if the beginning date of the period of discovery needs to be rolled back that can also be done if the facts then indicate it is appropriate to do so.

(Dk.241, pp. 4–5). The plaintiffs never sought review of this order but did file a motion for clarification on July 31, 1990. (Dk.243). In that motion, the plaintiffs did not contest the time parameters, and instead, incorporated them in their requested language to the magistrate judge. The magistrate judge issued his clarifying order on November 30, 1990, which became the subject of a plaintiffs' motion for review.

The district court's order filed October 24, 1991, (Dk. 386, 1991 WL 241814), decided the plaintiffs' motion for review (Dk.300) of the magistrate judges' orders filed November 30, 1990. (Dks. 295, 296, and 297). In that motion and supporting memorandum, the plaintiffs made several sweeping statements about the magistrate judge's discovery orders, but they focused their challenges on the subject matter limits that had been imposed and that were based on the issues, assets, or claims. The plaintiffs never specifically argued in their motion that the time parameters were an unreasonable restriction on discovery. Believing that the plaintiffs' position in the motion for review was consistent with their position in the motion for clarification, the district court did not consider there to be any objection to the time parameters and did not address any in its order of October 24, 1991.

other litigation. The court cannot stress enough that this evidence is being offered for a *limited purpose:* to demonstrate the strained relations between William Koch and his brothers, Charles and David Koch.[3] It is not to show that William Koch likes to file lawsuits, that William Koch files lawsuits devoid of merit, or that William Koch lacked proper feelings and consideration for his mother. To rebut the limited purpose for which this evidence is offered, the plaintiffs, in particular William Koch, should have the opportunity to discuss and relate his reasons for filing the lawsuits or for taking the position that led to the filing of the lawsuits. The court believes that the plaintiffs can effectively explain their reasons for filing or defending the lawsuits without introducing actual evidence that was used in those lawsuits or that has no other purpose than to prove the factual or legal merit behind their reasons for the lawsuits and without referring to any comments, findings, or rulings made by any court in that lawsuit or concerning that lawsuit. The defendants, in turn, are limited in explaining their position in those lawsuits without introducing actual evidence that was used in those lawsuits or that has no other purpose than to prove the factual or legal merit behind their reasons for the lawsuits and without referring to any comments, findings, or rulings made by any court in that lawsuit or concerning that lawsuit. Though such evidence and rulings may have some probative value in discerning the motives of the parties involved in a lawsuit, the court fully appreciates that the same is a slippery slope with the likely bottom being full-blown mini-trials of the other lawsuits. Consequently, the court believes Rule 403 concerns will in most instances cut off inquiry beyond that outlined above. In sum, the court does not retreat from its earlier ruling for the all of the reasons stated above.

## CONSULTATIONS WITH MENTAL HEALTH PROFESSIONALS

### Argument

In support of their motion to reconsider this ruling, the plaintiffs offer an excerpt from David Koch's deposition and an affidavit from William Koch. From this evidence, the plaintiffs argue that David Koch visited with Dr. Louis Chase, that Dr. Louis Chase was never William Koch's psychiatrist, and that such evidence is unfairly prejudicial. The defendants in response throw out several assumptions for why David Koch's testimony may be admissible and also offer Charles Koch's statement that "William told Charles that his psychiatrist had advised him that he had to 'stand up to Charles, he had to be a man.'" (Dk., p. 5).

### Ruling

The court modifies its earlier ruling as to David Koch's testimony[4] concerning his visit with a psychiatrist during which the psychiatrist made certain comments about William Koch. The court takes this motion under advisement, and neither side shall refer to this evidence in any statement, argument, or testimony before the jury without first approaching the bench and having its admissibility determined by the court. The court denies the plaintiffs' motion to reconsider as it concerns Charles Koch's testimony about what William Koch had told him.

## PLAINTIFFS' SUPPLEMENTAL OPENING ARGUMENTS

Certain plaintiffs request the opportunity to present a short opening statement of their own in which to briefly describe facts unique to their respective claims. *See* Plaintiff Frederick R. Koch's Memorandum in Support of Application to Present Supplemental Opening Statement (Dk.751); Simmons Plaintiffs' Statement (Dk.749). The defendants do not oppose the requests of those parties, "provided that [their separate opening] is limited to the matters set forth in [their briefs], provided that there is an adequate evidentiary basis for the statements made, and provided that the total time for the opening statements of all plaintiffs does not exceed the 2 hours allotted by the Court." (Dk.754).

---

3. Consistent with this limited purpose, the defendant should have no need to give more than a brief description of the lawsuit which informs the jury of the parties, the filing date, the nature of the suit, and the relief sought.

4. The plaintiffs attached this deposition testimony of David Koch as exhibit B to their motion for reconsideration.

The court grants the request of plaintiffs who have filed briefs to make an opening statement describing facts unique to their respective claims *as stated in the pretrial order.* Such opening statement should be confined to facts and subject matter proffered in that party's brief requesting the opportunity to make an opening statement. Obviously any opening statement by any party should be confined to a statement of the issues in the case and the evidence that party intends to offer and which that party believes in good faith will be available and admissible at trial. At the status conference, it was agreed that both sides would have two hours for their opening statements and the plaintiffs shall divide as they wish their allotted two hours.

The Simmons Plaintiffs' brief goes beyond merely requesting an opportunity to make their own opening statement. The Simmons Plaintiffs also request the opportunity to be heard during voir dire, examination of witnesses and closing argument. To the extent that the Simmons Plaintiffs are asking the court to reconsider the limitations imposed in paragraph 14 of the pretrial order, or the limitations orally announced by the court at the March 27, 1998, status conference,[5] that request is denied as untimely.

IT IS THEREFORE ORDERED that the plaintiffs' motion to reconsider (Dk.743) the court's in limine ruling on post–1985 lawsuits is denied and that the court's order filed March 20, 1998 (Dk.719) is clarified as stated above;

IT IS FURTHER ORDERED that the plaintiffs' motion to reconsider (Dk.743) the court's in limine ruling on the plaintiffs' consultations with mental health professionals is granted in part and denied in part.

IT IS FURTHER ORDERED that counsel for Frederick R. Koch and counsel for the

Simmons plaintiffs may give opening statements under the limitations set forth above.

---

5. At the March 27, 1998, status conference, the court indicated that it expected lead counsel to monitor the other counsel on their side to determine if supplemental, non-cumulative comments or questions are appropriate and necessary. The court also indicated that if it was anticipated that more than one counsel would be involved in the examination of a witness, that the parties should provide to the court and the other side at least 24–hour written notice of the witnesses, the additional counsel's name, and a brief proffer why that party's position is materially different from other parties on that side of the case.